FILED
2019 Apr-02 AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| DELILAH BRAND, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | 6:19-cv-00054-LSC |
| JOE CHURCH, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION**

Before the Court is Defendants' Joe Church ("Church") and Walker Rehabilitation Center's ("Walker Rehabilitation") Motion to Dismiss or in the Alternative Recharacterize Plaintiff's Complaint. (Doc. 3.) Plaintiff Delilah Brand ("Brand") originally filed this suit in state court alleging claims for breach of contract, breach of fiduciary duty, bad faith, negligent misrepresentation, false representation, intentional infliction of emotional distress, fraud in the inducement, failure to warn, deceit, and conversion. Defendants Church and Walker Rehabilitation removed the suit to this Court, arguing that Brand's claims are completely preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461, ("ERISA"). In response, Brand filed an Objection to Defendants' Notice of Removal (doc. 4), which this Court construes as a motion to remand. For the reasons stated

below, Church and Walker Rehabilitation's Motion to Dismiss (doc. 3) is due to be GRANTED in PART and DENIED in PART, and Brand's Motion to Remand (doc. 4) is due to be DENIED.

I. **BACKGROUND**[1]

Brand is a former employee of Walker Rehabilitation, which is owned and operated by Church. As an employee, Brand directed that payroll deductions from her paycheck be used to pay for Alliance Medical Supplement Insurance ("Alliance Insurance") premiums. On June 26, 2018, Brand started chemotherapy. To pay for these treatments, Brand presented her medical provider with her Alliance Insurance. However, Brand's medical provider notified her that the Alliance Insurance was invalid. According to Brand, her employers were not using her withheld wages to pay her insurance premiums, but instead, were converting funds deducted from her paychecks for their own purposes. Brand also alleges that Defendant Alliance Medical Supplement Insurance Company ("Alliance") acted in bad faith when it refused to pay her claim for the chemotherapy treatments and that it failed to warn her that the insurance premiums were not being paid.

---

[1] The following facts are taken from Brand's complaint, and the Court makes no ruling on their veracity.

## II. STANDARD OF REVIEW

Before reaching the motion to dismiss under Rule 12(b)(6), the Court must first decide whether it has subject matter jurisdiction over Brand's state law claims. Only if the Court finds jurisdiction will it address the motion to dismiss. To survive a 12(b)(6) motion to dismiss, a plaintiff must generally satisfy the pleading requirements in Fed. R. Civ. P. 8. Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need

not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (internal quotations omitted). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).

### III.  DISCUSSION

#### A.  Federal Jurisdiction and Complete Preemption

In determining whether remand is appropriate, the Court will ask whether removal was proper in the first place. Under 28 U.S.C. § 1441(a), defendants may remove a civil action if the action could have originally been filed in federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the action could not have originally been brought in federal court, it must be remanded to the state court in which it was filed. 28 U.S.C. § 1447(c). "Any doubts about the propriety of federal jurisdiction should be

resolved in favor of remand to state court." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). One such authorization of power is original jurisdiction over cases that "aris[e] under" federal law. 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a case arises under federal law only if the presence of a federal question is clear from the face of the plaintiff's complaint. *Caterpillar Inc.*, 482 U.S. at 392. In other words, the mere existence of an anticipated federal defense is insufficient to support federal question jurisdiction. *See id.* at 393.

Because Brand asserts only state law claims, the face of her complaint does not present a federal question. Complete preemption, however, is a "narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (citing *Caterpillar Inc.*, 482 U.S. at 393). ERISA's civil enforcement provision,

29 U.S.C. § 1132(a)(1)(B),[2] is one of the few federal statutes that completely preempts state law claims making those claims removable to federal court. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–67 (1987). Defendants argue that this provision is what allowed them to remove Brand's claims to this Court.

The Eleventh Circuit has adopted a two-part test to determine whether ERISA completely preempts a state law claim: "(1) whether the plaintiff could have brought [her] claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State*, 591 F.3d at 1345 (citing *Davila*, 542 U.S. at 210). The Court will now address each prong of what is known as the *Davila* test.

1. First *Davila* Inquiry

The first *Davila* prong is satisfied when two requirements are met: "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Id.* at 1350 (citing *Davila*, 542 U.S. at 211–12). To determine whether a particular insurance program falls within the scope of ERISA, courts usually begin by looking to whether ERISA's

---

[2] This provision provides: "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

regulatory safe harbor applies to the plan. *See Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n.2 (11th Cir. 2004). This safe harbor "excludes from ERISA's jurisdictional ambit certain group or group-type insurance programs offered by an insurer to employees or members of an employee organization." *See id.* For a program to fall within the regulatory safe harbor, the following four elements must be satisfied:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees . . . ;
>
> (3) The sole function of the employer . . . with respect to the program are without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer . . . receives no consideration in the form of cash or otherwise in connection with the program . . . .

*Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213 (11th Cir. 1999) (quoting 29 C.F.R. § 2510.3–1(j)). Brand argues that the Alliance Insurance policy falls within this regulatory safe harbor because the insurance was completely voluntary for Walker Rehabilitation employees and Walker Rehabilitation did not endorse the insurance program. Brand also states that Walker Rehabilitation's only involvement with her Alliance

Insurance was to collect the insurance premiums through Brand's payroll deductions.

This argument is belied by the allegations contained within Brand's complaint. According to Brand's complaint:

> 28. Plaintiff was employed by Defendant Walker Rehabilitation Center. Upon her securing employment, she was notified the Defendant provided Alliance Supplemental Insurance and a sum of monies would be withdrawn from each paycheck. This was a benefit which Defendant(s) provided for their employees. Plaintiff was told that this insurance was an employer sponsored health insurance which paid for her copays, deductibles, medical procedures and/or services which would be beneficial to her.
>
> 33. Upon her acceptance, of the position with Defendant Walker Rehabilitation Center, she was informed the Defendant would pay a portion of her insurance premium to Defendant Alliance Supplemental Insurance Company.
>
> 42. Defendant(s) . . . offered Plaintiff an employment package which included insurance that was affordable.
>
> 44. The [P]laintiff was caused to rely upon the offered employment package when she obtained employment with the defendant.

(Doc. 1-1 ¶¶ 28, 33, 42, 44.) These allegations suggest that not only did Brand's employer make contributions to the Alliance Insurance but that it also endorsed the program. An employer endorses a program if it "urges or encourages member participation in the program *or engages in activities that would lead a member to reasonably conclude that the program is part of a benefit arrangement established or maintained by the* [employer]." *Moorman*

*v. UnumProvident Corp.*, 464 F.3d 1260, 1267 (11th Cir. 2006) (quoting ERISA Op. Letter No. 94-26A, 1994 WL 369282 (July 11, 1994)) (emphasis in original). Here, according to Brand's complaint, her employer's representations about the Alliance Insurance led her to believe that it was part of an employer sponsored health insurance plan. Brand asserts that Walker Rehabilitation offered the insurance as part of an employment benefit package and promised to pay a portion of her insurance premiums. Thus, it appears that Walker Rehabilitation did more than simply collect the Alliance Insurance premiums through payroll deductions, and instead, took actions that constituted endorsement of the program.

Brand has presented the Court with no evidence to the contrary. Although Brand has submitted affidavits from herself and another former Walker Rehabilitation employee stating that they were told the cost of the supplemental insurance policy would be deducted from their pay, neither affidavit directly refutes the complaint's assertion that Walker Rehabilitation would also pay a portion of the Alliance Insurance premiums. (*See* Doc. 8 at 12–15.) The affidavits also do not contradict the complaint's allegations that Walker Rehabilitation took actions that led Brand to believe the Alliance Insurance was being offered as part of an employer sponsored health insurance program. Taking the allegations in the complaint as true, the Court

finds that Walker Rehabilitation engaged in activity that would lead a reasonable employee to believe that the Alliance Insurance was part of a benefit plan established by her employer. Because an insurance program falls outside of ERISA's regulatory safe harbor if just one of the safe harbor's elements is not met, the Court finds that the regulatory safe harbor does not apply to the Alliance Insurance.

Moreover, the Court is persuaded by Church and Walker Rehabilitation's argument that this supplemental policy cannot be unbundled from the Blue Cross Blue Shield ("Blue Cross") policy offered by Brand's employer. The Eleventh Circuit has held that the regulatory safe harbor cannot be used to sever supplemental insurance offered to employees as part of the employer's group insurance plan. *See Glass v. United of Omaha Life Ins., Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994) (concluding that the safe harbor did not apply to elective life insurance where employer provided basic life insurance as part of an employee benefit plan). This is true even if standing alone the supplemental insurance would fall within the regulatory safe harbor. *See id.* (holding that elective life insurance was subject to ERISA even though employer made no contributions to supplemental policy and the policy could be converted into an individual policy).

According to Brand's complaint, Walker Rehabilitation offered the Alliance Insurance as part of an employment package. (*See* Doc. 1-1 ¶¶ 42, 44.) Post-removal evidence submitted by Brand has clarified that the Alliance Insurance policy was one of three gap policies obtained by Brand through her employer. (*See* Doc. 8 at 6–8.) In her filings, Brand refers to the Alliance Insurance as "a complement to the [Blue Cross] policy which was offered to [Walker Rehabilitation] employees as their basic insurance policy." (*See* Doc. 8 at 4.) Based on the limited factual record before the Court, it appears that the Alliance Insurance policy was "part and parcel" of the basic Blue Cross policy offered by Walker Rehabilitation. *See Glass*, 33 F.3d at 1345. Thus, it may not be unbundled from that policy. Brand does not appear to dispute that the Blue Cross policy is governed by ERISA, and there is no evidence before this Court that would suggest otherwise. Accordingly, even to the extent that standing alone the Alliance Insurance policy falls within the regulatory safe harbor, the Court concludes that the safe harbor does not apply because the policy is merely one part of a larger health insurance plan that falls outside the scope of the safe harbor.

"Even if the safe harbor is barred, 'that does not necessarily mean that the insurance policy is part of an ERISA plan.'" *Moorman*, 464 F.3d at 1269

(quoting *Butero*, 174 F.3d at 1214). An employee welfare benefit plan requires:

> (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc); *see also* 29 U.S.C. § 1002(1). Health insurance benefits, like those Brand alleges were provided by Alliance Insurance, are the type of benefits that fall within ERISA's definition of an employee welfare benefit plan. As Brand directed that payroll deductions from her paycheck be used to help pay for what she referred to as "an employer sponsored health insurance," she was a participant in the plan at issue. *See* 29 U.S.C. § 1002(7).

However, Brand appears to argue that because her employers failed to pay the Alliance Insurance premiums and discontinued the policy that the policy should not be considered a plan "established or maintained" by her employers. The fact that Brand's employers allegedly allowed her Alliance Insurance policy to lapse has no bearing on whether Brand's claims are completely preempted by ERISA. Even when an insurance policy lapses due to an employer's failure to forward its employees' payroll deductions, this

does not mean that the policy at issue is not part of an ERISA plan. *See Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006). Instead, "assuming the other requirements for complete preemption are met, state law claims relating to a lapsed ERISA plan are completely preempted by ERISA." *Id.* Based on the allegations in Brand's complaint, the Court concludes that the Alliance Insurance policy was part of a plan established by her employer.

Brand also argues that her employers failed to follow several of the technical requirements of ERISA, which necessarily means that the Alliance Insurance policy was not part of an ERISA plan. Most of these purported technical violations are not reflected in either Brand's complaint or any of the post-removal evidence, but instead, are merely referred to in unsubstantiated assertions contained within Brand's briefs. Thus, there is no reason for the Court to consider whether a violation of these provisions would cause the Alliance Insurance policy to fall outside ERISA. The affidavits submitted by Brand do state that Walker Rehabilitation employees were never furnished summary plan descriptions of the Alliance Insurance plan as required by 29 U.S.C. § 1022(a). (*See* Doc. 8 at 12, 14.) However, there is no requirement of a summary plan description in either ERISA's coverage section, 29 U.S.C. § 1003(a), or its definition section, 29 U.S.C. § 1002(1).

Therefore, a plan may be established even if an employer fails to provide its employees with a summary plan description. *See Donovan*, 688 F.2d at 1372 (concluding that having a formal, written plan is not a prerequisite to coverage under ERISA).

In sum, the Court finds that the Alliance Insurance plan, which was a plan established by Brand's employer, falls within the scope of ERISA. Because Brand was a plan participant when her Alliance Insurance allegedly lapsed, she has standing to sue under ERISA § 502(a). *See* 29 U.S.C. § 1132(a)(1). And therefore, the first *Davila* prong is satisfied.

2. Second *Davila* Inquiry

No independent legal duty supports Brand's claims. That is because the Defendants' "potential liability . . . derives entirely from the particular rights and obligations established by the benefit plan[ ]." *See Davila*, 542 U.S. at 213. Brand's breach of contract, breach of fiduciary duty, negligent misrepresentation, false representation, fraud in the inducement, deceit, and conversion claims all assert that Brand's employers failed to make payments on her Alliance Insurance premiums with her payroll deductions. Brand alleges that although she was promised that these payments would be made she was never notified that her employers had failed to do so. Accordingly, Brand seeks reimbursement for those contributions that she thought were

going toward her insurance premiums. The breach of contract claim does not arise independently because the plan itself is what imposed the contractual duties that were allegedly breached by Brand's employers. Likewise, Brand's claims for breach of fiduciary duty, negligent misrepresentation, false representation, fraud in the inducement, deceit, and conversion all require the Court to assess the respective parties' rights and obligations under the plan.

Moreover, the bad faith, failure to warn, and intentional infliction of emotional distress claims brought by Brand require the Court to inquire into the terms of the ERISA plan. To determine the merits of these claims, the Court would have to interpret the plan's terms so that it could decide whether Brand's Alliance Insurance covered her chemotherapy treatments. As such, these claims do not arise from any independent legal duty. Because both parts of the *Davila* test are satisfied, Brand's claims are completely preempted by ERISA and thus arise under federal law. Accordingly, this Court has subject matter jurisdiction over Brand's claims, and Brand's motion to remand is due to be denied.[3]

---

[3] Brand also asserts that this case should be remanded because Defendant Alliance did not join in the removal. 28 U.S.C. § 1446 provides that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Here, Defendant Alliance was not properly served at the time of removal. Under Alabama law, a plaintiff may serve both individuals and corporate entities via certified mail. *See* Ala. R. Civ. P. 4(i)(2). In the case of a corporate entity, the certified

## B. Conflict Preemption

Unlike with Brand's motion to remand, for the purposes of the motion to dismiss, the relevant question is whether Brand's state-law claims are subject to defensive (conflict) preemption. *See Butero*, 174 F.3d at 1212 ("Reviewing the district court's dismissal of the complaint . . . raises only the question of whether the state-law claims were subject to *defensive* preemption."). ERISA § 514(a) provides that ERISA will preempt any state law that "relates to" a covered employee benefit plan. *See* 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). While conflict preemption is a separate inquiry from complete preemption, complete preemption is narrower than defensive preemption. *See Conn. State*, 591 F.3d at 1344. In other words, as Brand's claims are completely preempted under the narrower test, it is likely that they will also "relate to" an employee benefit plan under 29 U.S.C. § 1144(a) and be defensively preempted by ERISA as well.

---

mail must be addressed to an officer, partner, or other agent authorized by the entity to receive service of process. *See* Ala. R. Civ. P. 4(i)(2)(C), 4(c)(6). Based on the certified mail receipt, the certified mail sent to Defendant Alliance was addressed to "Alliance Medical Supplement." (*See* Doc. 1-1 at 21.) This is not a proper addressee. Therefore, Defendant Alliance had not been properly served at the time of removal, and its consent to removal was not required.

Here, Brand alleges that Walker Rehabilitation and Church wrongfully withheld and mismanaged her payroll deductions that were to be used to pay the premiums for or to make contributions toward the ERISA-covered benefit plan. It would be impossible to consider Brand's claims against her employers without considering the plan and the duties it imposed on these Defendants. Therefore, Brand's claims against Walker Rehabilitation and Church are defensively preempted. The Court will allow Brand to recharacterize her breach-of-contract claim as a claim for benefits under ERISA § 502(a) and dismiss all other claims against Walker Rehabilitation and Church as preempted under ERISA. Accordingly, the Court will also strike Brand's claims for extra-contractual and punitive damages, *see Godfrey v. BellSouth Telecomm., Inc.*, 89 F.3d 755, 761 (11th Cir. 1996), as well as her demand for trial by jury, *see Stewart v. KHD Deutz of Am. Corp.*, 75 F.3d 1522, 1527 (11th Cir. 1996).

## IV.   CONCLUSION

For the reasons stated above, Church and Walker Rehabilitation's Motion to Dismiss (doc. 3) is due to be GRANTED in PART and DENIED in PART. Brand's Motion to Remand (doc. 4) is due to be DENIED. Brand will have ten (10) days to amend her complaint to restate her claims against

Church and Walker Rehabilitation as ERISA claims. An order consistent with this opinion will be entered.

**DONE** and **ORDERED** on April 2, 2019.

_____
L. Scott Coogler
United States District Judge
194800