IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **Delilah Brand,** ) | |
|     **Plaintiff,** ) | |
| v. ) | Civil Action No.: |
| ) | 6:19-cv-00054-LSC |
| **Joe Church,** ) | |
| **Walker Rehabilitation Center, Inc.** ) | |
| **Alliance Medical Supplement Ins. Co.,** ) | |
|     **Defendants.** ) | |

**Defendant Walker Rehabilitation Center, Inc. and Joe Church's
MOTION TO DISMISS/ MOTION FOR SUMMARY JUDGMENT
In Response to Plaintiff's Third Amended Complaint**

Come Now, Defendants Walker Rehabilitation Center, Inc. ("WRC") and Joe Church, ("Defendants") and in response to Plaintiff's Third Amended Complaint, move to dismiss, or in the alternative, request summary judgment, on the following grounds.[1]

I.    **A $100 Financial Gain Precludes Damages Claims, and Standing.**

II.    **An ERISA Claimant's First Written Request Cannot Be a Summons.**

III.    **Equitable Relief Is Neither Warranted Nor Allowed.**

IV.    **Major Deficiencies Remain With the Latest Version of Claims Plead.**

---

[1] Defendants incorporate by reference their prior filings with the Court (including Doc. 30, the prior motion for summary judgment and its narrative summary and evidentiary materials), as allowed under the Court's General Order regarding dispositive motions. Doc 2, Appendix II.

I.   **A $100 Financial Gain Precludes Damages Claims, and Standing.**

Plaintiff's financial gain is not a compensable injury or loss for which recovery is allowed under ERISA. ERISA does not allow claims based merely on allegations of fiduciary misconduct; some specific and actual injury must exist.[2]

The Third Amended Complaint is wholly founded upon a single premise that Defendants improperly profited, to Plaintiff's detriment: Doc. 47, paragraphs 9, 16 ("self dealing" "for... profit"), 17 ("financially benefitted"), 24 ("self-dealing", "new coverage to ...benefit the Defendants"), 39 ("personally benefitted"), 41 ("profited"), 43 ("Brand...caused her financial loss").

However, this underlying premise is easily dis-proven from Plaintiff's own prior submissions and other documents previously filed with the Court. Those documents establish beyond doubt that Plaintiff had an overall 2018 financial gain of $100.18. Further, that same amount would be a cost to Defendant WRC, rather

---

[2] "[A] *de facto* injury is not alleged by reference to fiduciary misconduct under ERISA alone." *Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 530 (5th Cir. 2016), citing *David v. Alphin*, 704 F.3d 327, 336-37 (4th Cir. 2013). Further, even assuming arguendo any alleged impairment existed temporarily, "diminution in plan assets, without more, is insufficient to establish actual injury to any particular participant." *Perelman v. Perelman*, 793 F.3d 368, 374 (3d Cir. 2015) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-441 (1999). Ordinarily, a risk of default to the plan as a whole is required. *Id.*; *LaRue v. DeWolff*, 552 U.S. 248, 255, 128 S. Ct. 1020, 169 L. Ed. 2d 847 (2008); *Atkins v. Greene Cty. Hosp. Bd.*, No. 7:16-cv-00567-LSC, 2017 U.S. Dist. LEXIS 205626, at *13 (N.D. Ala. Dec. 14, 2017). Additionally, even assuming Plaintiff's claims are true (as required), "the mere fact that a plaintiff pays funds into a non-compliant plan, if an injury at all, is neither concrete nor particularized, and is instead, arguably conjectural and hypothetical and therefore does not satisfy injury-in-fact." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 (6th Cir. 2016)(internal quotations and citations omitted).

than the profit alleged in the Complaint:

First, as shown in both Plaintiff Delilah Brand's own previous evidentiary submissions to the Court and her deposition testimony, her payroll deductions for group supplemental health insurance in the amount of $50.09 biweekly ($100.18 monthly) ended July 23, 2018.[3] That is, there were no deductions from Plaintiff's paycheck for the subject coverage after July 23, 2018.

Second, despite the fact that these $100.18 monthly deductions ended in July 2018, Plaintiff was provided supplemental health insurance coverage from August 1, 2018 through December 31, 2018 at *no cost*, and without any additional deductions from her paycheck for the remainder of 2018.[4]

Simple math applied to these prior filings documents that Plaintiff actually had a financial gain from the late 2018 payment of premiums for coverage by her employer, as follows:

1. If Ms. Brand's biweekly deductions continued for all of 2018, Plaintiff's deductions would have totaled $1,202.16, rather than the $701.26 she

---

[3] Doc. 37-1, pps. 3-5, Plaintiff's Response, Declaration of Delilah Brand, First Attachment ("Secondary Health... $50.09"). See also; Doc. 30-1, p. 24 (Brand Deposition, p. 150, lines 2-7):
    Q.    When was the last time you had a deduction for supplemental health insurance?
    A.    It would be around July, after all this happened.
    Q.    Around July of 2018?
    A.    Yes.

[4] Doc. 8, p. 8, Exhibit 3 to Plaintiff's Response to Motion to Dismiss. See also; Doc. 30-1, p. 12-14 (discussing effective dates of coverage) and 36 (Exhibit 12 to Brand Deposition).

paid (Doc. 37-1).

2. Thus, Ms. Brand benefitted by paying $500.90 less in deductions than she had planned for 2018.

3. Even assuming the Complaint to be true (as required at this stage), even if Ms. Brand had no coverage for the four months[5] the Complaint alleges (and previously claimed, and during which time she had no claims, expenses or injuries), the $400.72 amount of total paycheck deductions for such period would still be less than the $500.90 benefit Plaintiff received for the period from August through December (2018) when Plaintiff received coverage at no cost to her.

In other words:

| | |
|---|---|
| 2018 Agreed and Planned bi-weekly deductions: | $1,202.16 |
| 2018 ACTUAL Deductions (ending July 23, 2018): | $ 701.16 |
| Gain (from reduced deductions) | $ 500.90 |
| Assuming gap as alleged in 3rd Am. Complt: | ($ 400.72) |
| **2018 FINANCIAL BENEFIT  to Ms. Brand** | **$ 100.18** |

Thus, rather than suffer injury as alleged in the Third Amended Complaint, Plaintiff benefitted by $100.18. Likewise, because the $100.18 benefit was paid by Defendant WRC[6], this was a cost, rather than the "profit" and "financial benefit" alleged in the

---

[5] Brand Response, Affidavit of D. Brand, Doc. 37-1, p.1, (referencing Feb. 1 date) and Doc. 8., p. 8. (Exh. 3 to Plaintiff's motion regarding remand-showing new coverage June 1).

[6] This is in addition to the $500 advanced to Ms. Brand, discussed below and previously briefed for the Court. Doc. 30 pps. 4, 13-18, 21-23 and Doc. 40, pps. 1-6.

Complaint. These were real and out of pocket actual amounts easily found within prior discovery and undisputably documented within this Court's own records.

Plaintiff ignores these actual out of pocket amounts in the Third Party Complaint. Instead, Plaintiff alleges that there was temporary impairment to a theoretical "value" (Doc. 47, paragraphs 13, 32-34)[7] of the supplemental health policy during the period where she never actually submitted a claim, and thus had no out of pocket expenses. However, this is not enough to sustain a claim, or even to confer standing: "Any theoretical damages are not compensable, and are insufficient to confer standing upon plaintiff." *Cavallo v. Utica-Watertown Health Ins. Co.*, 191 F.R.D. 342, 345 (N.D.N.Y. 2000)(discussing health policy based breach of fiduciary and other claims under ERISA, and noting: "If plaintiff has damages of any amount, those damages are purely theoretical and are not actual, out-of-pocket losses to him."). Likewise, as set out above (n. 2) and as previously briefed for the Court, the absence of damages precludes claims under ERISA. Doc. 30, pps. 4, 13-20 (Defendants' Motion to Dismiss/Summary Judgement, and evidence and authorities referenced therein, incorporated by reference here)

Based on the foregoing (alone) the Third Amended Complaint is due to be

---

[7] To be clear, the benefit at issue involved only supplemental health insurance coverage, where the only financial benefit was the payment of deductibles, co-payments and the like. Since this was neither a pension plan, ESOP nor cash value life insurance type policy that accumulated value over time, there was absolutely no "value" to the policy other than the payment of the out of pocket deductibles during the policy period.

dismissed with prejudice.

## II. An ERISA Claimant's First Written Request Cannot Be a Summons.

As previously stated in Defendants' prior filings, and incorporated by reference here: "The Eleventh Circuit's exhaustion rule could be characterized, practically speaking, as 'if in doubt, exhaustion is required'." *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1336 (N.D. Ala. 2004). Defendants' prior materials also set out clear ERISA law precluding suit where the Plaintiff had never even bothered to write her employer or the insurance company about her coverage or claim prior to filing suit. Doc. 30, pps. 18-21, Doc. 40, pps. 3-5. Plaintiff has recently again admitted to the Court no written requests were made by Ms. Brand. Doc. 37, p. 21, n. 9 ("If a written request had been made..."). Respectfully, these materials (incorporated by reference) and established precedent previously cited prevent a Summons and Complaint for a lawsuit to serve as an ERISA claimant's first written notice of a claim, or as a written request for information about her coverage.

## III. Equitable Relief Is Neither Warranted Nor Allowed.

As the Court previously pointed out, originally this case involved only a claim for benefits: "The Court will allow Brand to recharacterize her breach-of-contract claim as a claim for benefits under ERISA § 502(a) and dismiss all other claims against Walker Rehabilitation and Church as preempted under ERISA." Doc. 21, p. 17 (Opinion regarding Dismissal and Remand). Having failed to develop their

original claim for benefits, Plaintiff has now dropped those claims and tried to change horses with the Third Amended Complaint's allegations of fiduciary breaches.

In ERISA cases, while contract claims are routinely allowed to be converted to benefit claims (*Id.*), they are not allowed to be converted a second time into breach of fiduciary claims. Another Judge in this District recently surveyed the law on this issue, and explained why benefit claims cannot be transformed into fiduciary ones:

> This is essentially a breach of contract claim for which § 1132(a)(1)(B) provides a remedy. See *Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288, 1295-96 (N.D. Ala. 2014) (no breach of fiduciary duty claim where complaint alleged defendants failed to inform her about plan benefits and failed to enforce plan as written); *Beckham* [v. *Liberty Life Assur. Co.*], 4 F. Supp. 3d [1266] at 1271 [(M.D.Ala. 2014)] (no breach of fiduciary duty claim where plaintiff complained of denial of benefits under the plan); *Smith v. Life Ins. Co. of N. Am.*, No. 13-2047-VEH, 2014 U.S. Dist. LEXIS 44494, 2014 WL 1330936 (N.D. Ala. Mar. 31, 2014) (dismissing claims for breach of fiduciary duty where complaint concerned benefits withheld); *Tabb-Pope* [v. *SAN, Inc.*,], 2013 U.S. Dist. LEXIS 150587, 2013 WL 5707327 at *6-7 [(N.D. Ala., Aug. 23, 2013)](same); see also *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003) ("following *Varity* federal courts have uniformly concluded that, if a plaintiff can pursue benefits [*9] under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)") (quoting *Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (alteration incorporated)). Accordingly, the allegations in the amended complaint regarding statements Blue Cross made about proton therapy will not support a claim for equitable relief under § 1132(a)(3).

*Woodruff v. Blue Cross & Blue Shield of Ala.*, No. 2:16-cv-00281-SGC, 2017 U.S. Dist. LEXIS 41921, at *8-9 (N.D. Ala. Mar. 23, 2017). See also: *Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288, 1295-96 (N.D. Ala. 2014)(cited above, and

noting: "Additionally, [Plaintiff's] claim that she was not provided information does not state a claim for breach of fiduciary duty." *Id.*).

In short, the loss of faith in their benefit claims does not entitle Plaintiff to bring claims alleging a breach of fiduciary duty. Further, a breach of fiduciary claim does not lie for a mere failure to provide information, *Caudle*, particularly where no written request for information was ever made.[8] Breach of Fiduciary claims do not lie for other reasons which Defendants have previously raised to the Court, and which are incorporated by reference here (Doc. 40, pps. 4-5, Doc 30-2, Doc. 26, p. 2 paragraph 3).

While Plaintiff maintains that she seeks equity and alleges breach of fiduciary duty, the actual claims appear to be for individual compensatory damages for herself, and not for the plan, as required when this type of relief is sought. (*Id.*) Further, and perhaps more importantly, the fact that Plaintiff is still seeking benefit claims is proven by paragraph 23 of her latest complaint.

### IV. Major Deficiencies Remain With the Latest Version of Claims Plead.

Paragraph 23 of the latest complaint now alleges that there was a claim filed

---

[8] Nor does the law ordinarily allow for "obey the law" injunctive relief as sought in Count II (page 11, paragraph "b.". "Such injunctions are disfavored..." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1361 (11th Cir. 2019). Further, requiring Defendants to file proper tax returns showing that amounts were paid on liability that is yet to be determined (and hotly contested) is not a proper subject for injunctive relief, nor has it been alleged why such equitable relief is needed for plaintiff or why the remedy at law is inadequate concerning the tax treatment of the $500 amount Plaintiff refers to. *Id.*

with a carrier[9] in 2018 which was never reported to the Defendants and which is contrary to Plaintiff's own prior testimony. While perhaps risking the ire of this court for repetition, duty to the Court and client requires one more quote of Plaintiff's testimony in this case on claims she actually had in 2018:

> Q. Okay. Let me make sure I understand this right. The <u>only time</u> you ever made a claim under your supplemental health insurance in 2018 or 2019 was when you had the biopsy; is that right?
> A. Yes, sir.
> Q. And that claim was for $500?
> A. Yes, sir.
> Q. And you were given a check for that?
> A. Yes, sir.

Deposition of Plaintiff, Delilah Brand, p. 150, lines 8-17. (Emphasis added. Previously quoted on Doc. 30, p. 14 and in other places). This issue has been repeatedly addressed (Docs. 30 and 40), and Defendant will not repeat it, but the vague allegations in paragraph 23[10] in the Third Amended Complaint now imply that there was some sort of other claim which was undated, unfiled, and unreported to any

---

[9] The vague nature of this reference may be to hide the fact that this may be in reference to the claim plaintiff (or her lawyers) filed with the wrong carrier, as pointed out previously to the Court, Doc. 40, p.3, n. 5. At the time that claim was filed, Plaintiff knew where coverage existed, but chose to file a claim under a policy that was no longer applicable, perhaps to develop evidence for her case on a non-issue.

[10] That paragraph alleges:
"23.    Several weeks later, Ms. Brand needed further medical care. Ms. Brand was again informed that her coverage remained terminated. Ms. Brand could not receive the medical care as a result of the lack of supplemental insurance. A claim was filed with the provider and the claim was rejected due to termination of the coverage."
Doc. 47.

defendant does not change the issues before the Court.

Defendants respectfully request two things with respect to this new allegation in paragraph 23:

First, that the Court consider it as proof that claims for breach of fiduciary duty do not lie: Because Plaintiff is now specifically alleging a new benefit is/was allegedly owed, the true nature of the Third Amended Complaint is borne out, and it is one for benefits, precluding breach of fiduciary claims; *Woodruff*, et al., supra, above.

Second, that in light of the Plaintiff's previous clear testimony on this issue, the Court grant summary judgment on this issue, and, if not dismissed in its entirety, a specific ruling be made that absent written proof that any such claim existed and a good explanation as to why it has not been previously reported, discussed in the parties planning conference and Rule 26 disclosures and produced, the plaintiff be limited to testifying and seeking benefits regarding the sole claim she provided sworn testimony upon, and precluded from making up or alleging new claims she appears to have discovered since her sworn testimony.

WHEREFORE, Defendants Walker County Rehabilitation Center, Inc. and Joe Church respectfully request that this Court grant their motion.

Respectfully submitted,

s/ Edward M. Weed
Edward M. Weed (WEE007)
Martin Weed, LLC
3900 Montclair Road, Suite 290
Birmingham, Alabama 35213
(205)443-6661
emweed@martinweedllc.com

Counsel for:
**Joe Church** and
**Walker Rehabilitation Center, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that I have this 10th day of September, 2019, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will transmit a copy to all parties of record, namely:

Byron McMath, Esquire
301 West 20th Street
Jasper, Alabama 35501
bgm@mcmathlawfirm.com

David P. Martin, Esquire
The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402
Ph.: (205) 343-1771
Facsimile: (205) 343-1781
david@erisacase.com

                                                        s/ Edward M. Weed
                                                        Of Counsel